IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMON PULLIAM, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 8463 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Lamon Pulliam ("Claimant") brings this action under 42 U.S.C.§ 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefits and supplemental security income.[1] Claimant argues that the decision of the Administrative Law Judge ("ALJ") denying his applications for disability insurance benefits and supplemental security income should be reversed or, alternatively, should be vacated and remanded to the Social Security Administration ("SSA") for further proceedings. In support of his motion for summary judgment, Claimant raises the following issues: (1) whether the ALJ properly evaluated Claimant's credibility; (2) whether the ALJ improperly relied on the opinion of the State Agency Physician; and (3) whether the ALJ sufficiently considered Claimant's limitations when making his residual functional capacity ("RFC") determination.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

For the reasons discussed herein, Claimant's motion for summary judgment is granted [Dkt.#18], and the Commissioner's cross-motion is denied [Dkt.#23]. This matter is remanded to the SSA for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

**A.  Procedural History**

Claimant filed applications for disability insurance benefits and supplemental security income on January 29, 2008, alleging a disability onset date beginning March 1, 2005. R.223-29. The SSA initially denied the applications on July 16, 2007 and, upon reconsideration, on December 17, 2007. R.80-83. Claimant requested a hearing and appeared with his attorney and testified at a hearing before ALJ John Mondi on September 17, 2009. R.25-52. The ALJ issued a written decision denying benefits on January 12, 2010. R.85-93.

Claimant requested review by the Appeals Council, which remanded the matter on September 19, 2010 to the ALJ for further consideration. R.98-101. The ALJ held a second hearing on April 12, 2011, in which Claimant amended his application for benefits, seeking a closed period of disability from July 19, 2004 through December 31, 2008. R.57. The ALJ issued another decision denying benefits on May 25, 2011. R. 13-28.

Claimant again requested review by the Appeals Council but review was denied on September 28, 2011, making the ALJ's determination the final decision of the Commissioner. R.1-6. Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

B.  **Hearing Testimony**

1. **Claimant Lamon Pulliam**

At the time of the second hearing in 2011, Claimant was 34 years old. R.58. He is single and has four children. R.37, 58. Claimant attended high school and has past relevant work as a laborer, forklift driver, an order picker, and a self-employed contractor. R.37, 56. Claimant testified that he was involved in a motorcycle accident in 1998 in which he broke his left tibia and required the implantation of a rod and screws to hold the bone in place.R.40.

Claimant testified that he was a self-employed contractor from 2002 until January 2007. R.38. Claimant testified that he did the paper work and hired someone to install cable wire but that he didn't make much money. R.38-39. Claimant testified that he had to stop working because the implants became infected and caused Claimant pain and swelling that limited his ability to bear weight on his left leg or stand and walk for an extended period of time. R.41. Claimant testified that he underwent multiple surgeries to remove the infected implants and to treat a bone infection. R.33-35. Claimant was shot in the arm and chest in 2004 and testified that had problems gripping, holding and picking up objects with his left hand. R.41.

Claimant acknowledged that he worked for a three month period in 2008 and returned to full time work sometime in 2009. R.58, 59.

C.  **Medical Evidence**

Claimant submitted some medical evidence but there are significant gaps in treatment in the medical records submitted by Claimant.

3

1. **Methodist Medical Center**

There are medical records dated September 26 - 27, 2004 from Methodist Medical Center which document Claimant's gunshot wound and subsequent treatment. R.341-346. The bullet was removed (R.346), and x-rays of the elbow showed fractured of the ulna and radius. R.341, 343. Claimant was discharged to his local orthopedic surgeon and physician for follow-up treatment and care. R.341, 345.

2. **Stroger Hospital**

There are various medical records from Stroger Hospital dated intermittently from May 31, 2004 through September 13, 2009. Claimant was admitted to the hospital on June 5, 2004, diagnosed with tibial osteomyelitis and discharged June 10, 2004. R.354. He was discharged with crutches and instructed to return to the clinic to schedule surgery. R.354.

Claimant was admitted to Stroger Hospital again March 6, 2007 for surgery and discharged March 15, 2007. R. 393. Claimant was admitted due to an infection in his left tibia as a result of the pin in his leg. R.393.[2]

3. **Dr. Mahesh Shah M.D.**

Dr. Shah is a consulting physician who reviewed the medical records provided by the Bureau of Disability Determination Services and also examined Claimant. R. 494-498. Dr. Shah noted in the examination that Claimant had discomfort with his left leg and knee and slight weakness in the second and third fingers of his left hand.

---

[2] There are some additional minimal records from Oak Forest Hospital (R.3780384, 473 493) as well as Loyola University Medical Center (R.550-559) not specifically discussed herein.

### 4. State Agency Physicians

Dr. C.A. Gotway performed a Residual Functional Capacity Assessment and concluded on July 11, 2011 that Claimant was restricted to light work with some limitations and would be able to return to work by March 8, 2008 after recovering from his most recent surgery on his leg. R.502-509.

### D. The ALJ's Decision

Based on the applications for disability insurance benefits and supplemental security income filed by Claimant on March 2, 2007, the ALJ concluded that Claimant is not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. R.24.

At step one, the ALJ found that Claimant had engaged in substantial gainful activity after the alleged onset of disability and is now seeking disability benefits only for the period from July 19, 2004 until December 31, 2008. R.19. At step two, the ALJ found that Claimant had severe impairments: left tibia osteomyelitis, which is an infection of the bone, and residuals of a gunshot wound to the left upper extremity. R.20. At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that for any 12-month period met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R.23. Specifically, the ALJ concluded: "Although the claimant experienced subsequent infection of the tibia and osteomyelitis that required removal of the hardware in March 2007 and a second surgery in 2007 to ensure that the bone was clean and healing, he returned to effective ambulation within 12 months of the subsequent exacerbation." R.21. The ALJ also concluded

that the medical evidence revealed that Claimant's left elbow gunshot wound "was treated conservatively and healed within 12 months." R.21.

The ALJ then considered Claimant's RFC and concluded that Claimant has "the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), not requiring concentrated exposure to hazards; climbing ladders,, ropes or scaffolds; more than occasional balancing, kneeling, stooping, crouching, crawling, climbing of ramps and stairs, reaching, handling, feeling and fingering with the left hand." R.21. The ALJ further concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent that are inconsistent with the above residual functional capacity assessment when compared against the objective medical evidence and evaluated using the factors in Social Security ruling 96-7p." R.22.

At step four, the ALJ concluded that, based on the opinion of the Vocational Expert ("VE"), Claimant is unable to perform his past relevant work and had a RFC for light work "which precluded climbing ladders, ropes or scaffolds; more than occasional balancing, kneeling, stooping, crouching, crawling or climbing ramps and stairs; concentrated exposure to hazards; and which limited use of the left-hand to no more than occasional reaching, handling, feeling and fingering." R.22-23.

At step five, the ALJ concluded, based on the VE's opinion and considering Claimant's age, education, work experience and RFC, that "[d]uring the period at issue, ... jobs existed in significant numbers in the economy that he could ave performed." R.23.

## II. LEGAL STANDARD

**A.     Standard of Review**

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 CFR. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs

exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of his motion for summary judgment: (1) whether the ALJ properly evaluated Claimant's credibility; (2) whether the ALJ improperly relied on the opinion of the State Agency Physician; and (3) whether the ALJ sufficiently considered Claimant's limitations when making his RFC assessment.

**A.     The ALJ Did Not Sufficiently Explain His Adverse Credibility Determination**

An ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ has the discretion to discount testimony on the basis of evidence in the record. *Johnson v. Barnhart*, 449 F.3d 804, 806-807 (7th Cir. 2006). However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96-7p.

The ALJ held that the "claimant's statements are not credible to the extent they are inconsistent with" his RFC assessment. R.21. Such language, however, without more of a rationale in the record, has been deemed "meaningless boilerplate" and criticized for providing "no clue" as to the weight the ALJ gave a claimant's testimony. *Martinez et. al. v. Astrue*, 630 F.3d 693 (7th Cir. 2011) (rejecting boilerplate credibility determinations); *Parker et. al. v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness' testimony is "not entirely credible"

9

yields no clue to what weight the trier of fact gave the testimony."); *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006) (indicating that a partially credible determination that the person is credible, but not to the extent alleged, is an odd finding and unclear in meaning).

The criticisms identified in *Parker* are particularly true in this case when the ALJ offers no specific reasons for discounting Claimant's credibility. Because the ALJ did not explain specifically what was credible or not credible about Claimant's testimony regarding his alleged work activity and subsequent inability to work and the limiting effects of his impairments, the ALJ's credibility assessment lacks sufficient explanation. The ALJ's conclusory assessment of Claimant's alleged limitations is not sufficient to build a logical bridge from the evidence to the ALJ's conclusions.

It is not clear from the ALJ's opinion that he ever specifically addressed and analyzed the factors listed in SSR 96-7p. The ALJ simply stated that the RFC assessment "is supported by objective medical evidence and expert opinion." R.22. That is not sufficient. The Court recognizes that the longitudinal record shows that Claimant pursued medical treatment for his impairments, worked intermittently and that his limitations resolved as Claimant now is engaged in substantial gainful activity. The ALJ, however, cannot use an unsuccessful attempt at work to discredit the severity of a claimant's symptoms or deduce that a claimant was capable of working and is not disabled. *See* 20 C.F.R. § 404.1574(c); *Kangail v. Barnhart*, 454 F.3d 627, 629-30 (7th Cir. 2006). Claimant's attempt to work cannot discredit his credibility. This case should be remanded for the ALJ to consider Claimant's testimony in light of his symptoms consistent with the medical records, and the ALJ in making a credibility assessment must consider all of these

factors and not cherry pick one or two facts that supports his decision and reject or not consider the facts that militate against a finding of disability.

Thus, for all of these reasons, it is necessary to remand the case to allow the ALJ further opportunity to explain the basis for his adverse credibility determination and, possibly, to further develop the record.

**B.     The ALJ Improperly Relied On Outdated Opinion Evidence To Support His RFC Assessment**

An ALJ must explain how he reached his conclusions about a claimant's physical capabilities. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ must build an "accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544. The ALJ must identify some record basis to support the RFC finding. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The ALJ relied upon the opinion of the State Agency physician in formulating his RFC. Claimant argues that the ALJ's reliance on the State Agency physician's opinion was misplaced. The Court agrees.

The State Agency physician opined that Claimant would be able to sit, stand and walk for six hours in an eight hour work day and otherwise work at the light exertional level based on an inference that Claimant would have recovered and healed from surgery by March 2008. R.509. The ALJ held a hearing in this case in April 2011 and relied on the State Agency physician's opinion based on a projected recovery date that was outdated by several years. Since so much time had passed, the ALJ should have ordered another consultative exam to determine if the projected recovery had indeed occurred as predicted or to assess Claimant's actual abilities based on an updated medical record. *Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000). In *Smith*,

11

the ALJ's decision was reversed, in part, because the ALJ relied on outdated x-rays as evidence of the severity of the claimant's impairment. *Id.*

Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). Failure to fulfill this obligation is "good cause" to remand for gathering of additional evidence. *Id.* at 586. The Court fails to see how the ALJ properly assessed the extent of Claimant's limitations, as testified to by Claimant, without an updated medical assessment of his impairments.

Claimant testified that because of his limitations, he was unable to get out of bed some days, and records demonstrated that he could not put weight on his left leg and that, at times, he used crutched or a cane to ambulate. R.42, 48-49, 369, 373, 407, 488, 490. Some medical records corroborate Claimant's testimony that when he attempted to return to work and had to stand all day, he developed osteomyelitis and the drainage in his left leg increased. R. 535. This is consistent with Claimant's testimony about his difficulty working at several jobs he identified at both hearing such as not being able to work at a competitive pace, being let go after his employer learned of the drainage from his leg, and that he was not able to stand or use tools he was required to use for his job. R. 37-38, 44-45, 61-63.

Based on Claimant's testimony and additional medical evidence available at the time of the hearing, the ALJ should have obtained an updated medical opinion. Remand, therefore, is the appropriate result in this case. Nothing in this Court's decision today, however, is intended to say that the result the ALJ reached here is wrong on the merits. But the Court cannot affirm the result reached by the ALJ on this record. The ALJ must better explain his conclusions.

### C. The ALJ Failed To Take Claimant's Limitations Into Consideration When Making His RFC Determination

Social Security Ruling 96–8p requires that a determination of a claimant's RFC must "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p. Claimant also argues that the ALJ's RFC assessment legally was deficient because the ALJ failed to consider evidence of Claimant's limitation in determining that he was able to work at the light exertional level. The Court agrees.

The ALJ failed to discuss favorable evidence of Claimant's leg problems such as the reported pain, swelling, the drainage from his subcutaneous abscesses, and his inability to use his left leg to ambulate or bear weight. *See* R.275, 352-353, 364, 367, 379, 430, 433, 556-558. Claimant testified that he was not able to stand and move quickly enough at a job to stay competitive, that he experienced pain, swelling and cramps in his leg and was not able to walk a block. R.37-38, 41, 65, 67. Claimant also testified about limitations with his left hand and that he had difficulty gripping, holding or picking up objects and that he had no feeling in two fingers of his left hand. R. 42, 47, 50, 63. The ALJ failed to address these ambulatory, manipulative and dexterity limitations. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("[The ALJ] must confront the evidence that does not support his conclusion and explain why it was rejected."); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (failure to follow Social Security Ruling 96-8p constitutes reversible error),

The entirety of the ALJ's RFC analysis and conclusion that Claimant is not disabled is a notation of two alleged inconsistencies (which are neither specifically identified nor discussed) and a recitation of the State Agency physician's outdated opinion with no further discussion of

13

the remainder of the medical evidence in the record or Claimant's testimony. R.22. This is woefully insufficient, and this case must for remanded for further development of the record and a more fulsome and comprehensive discussion explaining the ALJ's conclusions.

Reading between the lines, it is clear that the ALJ did not believe Claimant's testimony about his limitations and rejected the notion that Claimant was unable to work for a consecutive 12-month period. However, as discussed herein, the ALJ did not sufficiently explain his credibility assessment and it is not clear to the Court what specific testimony the ALJ discounted or rejected. The Court recognizes that upon remand the ALJ may reach the same conclusions. The Court, however, cannot say on this record that the failure to discuss the medical evidence after the State Agency physician rendered his opinion or Claimant's testimony on his alleged limitations is harmless. Remand, therefore, is appropriate.

## IV.  CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary judgment is granted [Dkt.#18], and the Commissioner's motion is denied [Dkt.#23]. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 25, 2013